**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

PERCIVAL VALENTINE,

                           Plaintiff,

    - v -                                            Civ. No. 9:05-CV-232
                                                                      (GLS/RFT)

D.B. DREW, Warden, and KATHY SNYDER,
Law Library Coordinator,

                           Defendants.

**APPEARANCES:**                                           **OF COUNSEL:**

PERCIVAL VALENTINE
Plaintiff, *Pro Se*
55317-053
USP Canaan
P.O. Box 300
Waymart, PA 18472

HON. GLENN T. SUDDABY                        BARBARA D. COTTRELL
United States Attorney for the                     Assistant United States Attorney
Northern District of New York
Attorney for Defendants
445 Broadway
Room 218
James T. Foley Courthouse
Albany, N.Y. 12207

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

     *Pro se* Plaintiff Percival Valentine brings a civil action pursuant to 42 U.S.C. § 1983, alleging lack of access to law library materials in violation of the First Amendment. Dkt. No. 4, Am. Compl. at ¶¶ 19 & 20. However, since the individual Defendants are federal officers and the events giving rise to the claims herein occurred in a federal prison, the section 1983 claims will be

treated as *Bivens* claims. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) (citing *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971) for the proposition that a federal inmate may bring an action for constitutional violations just as state inmates would under § 1983 & *Daloia v. Rose*, 849 F.2d 74, 75 (2d Cir. 1988) ("construing *pro se* section 1983 claims against federal defendants as *Bivens* claims")). We note that, generally, case law under 42 U.S.C. § 1983 applies to *Bivens* cases. *See Chin v. Bowen*, 833 F.2d 21, 24 (2d Cir. 1987) (quoting *Ellis v. Blum*, 643 F.2d 68, 84 (2d Cir. 1981)). Essentially, Plaintiff claims that the law library at the Federal Institution is insufficient as he has no access to state law materials and is therefore restrained in his pursuit to attack a state conviction which served the basis for his current enhanced federal sentence. Defendants D.B. Drew, Warden at the Federal Correctional Institution in Ray Brook, New York ("FCI Ray Brook"), and Kathy Snyder, Law Library Coordinator bring a Motion to Dismiss, or in the alternative, for Summary Judgment. Dkt. No. 20. Plaintiff opposes Defendants' Motion. Dkt. No. 21. For the reasons to follow, it is recommended that the Defendants' Motion for Summary Judgment be **granted**.[1]

## I. FACTS[2]

Plaintiff is a federal inmate who was previously housed at FCI Ray Brook. Dkt. No. 20, Defs.' 7.1 Statement at ¶ 1, Ex. 1a, Inmate Data Form at p. 1. Previously, Plaintiff entered into a

---

[1] Plaintiff and Defendants submit Exhibits that are outside the pleadings. Therefore, as the Court will consider matters outside the pleadings, the Motion will be treated as one for Summary Judgment. *See infra* Part II.A. We note that no prejudice befalls Plaintiff as he has submitted matters outside the pleadings in support of his Opposition.

[2] Plaintiff's response to the Motion for Summary Judgment fails to comport with the requirements of the Local Rules for the Northern District of New York. *See* N.D.N.Y.L.R. 7.1(a). Despite the fact that Plaintiff submitted a 7.1 Statement as required, he does not "mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs." N.D.N.Y.L.R. 7.1(a)(3). Nevertheless, the Court will proceed to discern the facts from the 7.1 Statements provided as well as the Exhibits attached to the Motion.

Plea Agreement with the Government[3] and subsequently, on April 16, 2002, Valentine was sentenced in the United States District Court for the Eastern District of New York to a term of one hundred sixty-eight (168) months along with a four (4) year term of supervision for importing at least five hundred (500) grams of cocaine in violation of 21 U.S.C. §§ 952(a) & 960(b)(2).  *Id.* at ¶ 2, Ex. 1a, Inmate Data Form at p. 2; Dkt. No. 21, Pl.'s 7.1 Statement, Ex. A, Plea Agreement.

On February 9, 2004, Plaintiff sent a letter to the Clerk of the Court for the Supreme Court of the State of New York, Bronx County, seeking state law research material on New York Criminal Procedure Law 440 motions.  Pl.'s 7.1 Statement at ¶ 3, Ex. D1, Clerk Lt., dated Feb. 9, 2004.  On February 20, 2004, Plaintiff received a response from the Correspondence Unit of the Bronx Supreme Court, stating that Plaintiff would have to contact his attorney or correction counselor aide to assist in the matter because the court did not have the resources sought by Plaintiff.  *Id.* at ¶ 4, Ex. D2, Resp. Lt., dated Feb. 20, 2004.

On August 11, 2004, Plaintiff submitted an Inmate Request to Defendant Snyder for "legal material for filing an appeal or motion to New York State conviction."  Defs.' 7.1 Statement at ¶¶ 3-5, Ex. 1b, Inmate Req. to Staff, dated Aug. 11, 2004; Pl.'s 7.1 Statement at ¶ 3, Ex. D3, Inmate Req. to Staff, dated Aug. 11, 2004.  Defendant Snyder responded on August 12, 2004, and stated that the law library did not maintain state materials and that Plaintiff should contact the clerk of the court in the district where his case would be heard to obtain any materials needed by Plaintiff.  Defs.' 7.1 Statement at ¶¶ 6 & 7, Ex. 1b, Inmate Req. to Staff, dated Aug. 11, 2004; Pl.'s 7.1 Statement, Ex. D3, Inmate Req. to Staff, dated Aug. 11, 2004.  Plaintiff appealed this decision to Defendant Drew

---

[3] The date of the Plea Agreement is unknown as Plaintiff does not provide this Court with a complete copy of the Agreement.

on September 7, 2004. Defs.' 7.1 Statement at ¶¶ 8-10, Ex. 1c, Req. for Admin. Remedy, dated Sept. 7, 2004; Pl.'s 7.1 Statement at ¶ 11,[4] Ex. E4, Resp. to Req. for Admin. Remedy, dated Sept. 29, 2004.[5] On September 29, 2004, Defendant Drew responded and stated that the law library was in full compliance with "Program Statement 1315.07, *Inmate Legal Issues*, Section 2 part d," which provides that the Bureau of Prisons is not required to furnish state law materials. Defs.' 7.1 Statement at ¶¶ 11-12, Ex. 1c, Resp. to Req. for Admin. Remedy, dated Sept. 29, 2004; Pl.'s 7.1 Statement at ¶ 11,[6] Ex. E4, Resp. to Req. for Admin. Remedy, dated Sept. 29, 2004. Warden Drew suggested Plaintiff contact the clerk of the court where his case was pending to obtain research materials requested. Defs.' 7.1 Statement at ¶ 13, Ex. 1c, Resp. to Req. for Admin. Remedy, dated Sept. 29, 2004. Then, on October 7, 2004, Plaintiff further appealed the Warden's decision to the Northeast Regional Director of the Federal Bureau of Prisons. *Id.* at ¶¶ 14 & 15, Ex. 1d, Regional Admin. Remedy Appeal, dated Oct. 7, 2004; Pl.'s 7.1 Statement at ¶ 12, Ex. E5, Regional Admin. Remedy Appeal, dated Oct. 7, 2004. On November 8, 2004, the Regional Director denied the appeal stating that "pursuant to Bureau policy, state officials are responsible for providing state legal materials" and further reiterated the same findings made by Warden Drew. Defs.' 7.1 Statement at ¶¶ 18-20, Ex. 1d, Resp. to Regional Admin. Remedy Appeal, dated Nov. 8, 2004; Pl.'s 7.1 Statement at ¶¶ 12 & 13, Ex. E6, Resp. to Regional Admin. Remedy Appeal, dated Nov. 8, 2004. On November 11, 2004, Plaintiff appealed to the National Appeals Administrator in the Bureau of

---

[4] Plaintiff inadvertently duplicated the number 11 when numbering his paragraphs in his 7.1 Statement. The reference to the Request for Administrative Remedy of September 7, 2004, refers to the second paragraph 11.

[5] Plaintiff refers to Exhibit E3 for the Request for Administrative Remedy, dated September 7, 2004. However, that Exhibit was not attached to Plaintiff's Response to the Motion. Nevertheless, a reference is made to that Request for Administrative Remedy in Exhibit E4.

[6] The Warden's Response of September 29, 2004, also refers to the second paragraph 11 of the 7.1 Statement.

Prisons Office of General Counsel. Defs.' 7.1 Statement at ¶¶ 21-22, Ex. 1e, Central Office Admin. Remedy Appeal, dated Nov. 11, 2004. Plaintiff claimed that he is not a state prisoner who was transferred to federal prison and therefore, he would not be under state jurisdiction to qualify him for state materials. *Id.* at ¶ 23, Ex. 1e, Central Office Admin. Remedy Appeal, dated Nov. 11, 2004. Plaintiff asserted Warden Drew had the authority under 28 C.F.R. § 543.10 to provide the state legal materials. *Id.* at ¶ 24, Central Office Admin. Remedy Appeal, dated Nov. 11, 2004. The Administrator of National Inmate Appeals responded on February 3, 2005, and stated that Program Statement 1315.07 did not require the law library to carry state law legal materials. *Id.* at ¶¶ 25-27, Resp. to Central Office Admin. Remedy Appeal, dated Feb. 3, 2004.

In addition to Plaintiff's first Inmate Request filed on August 11, 2004, on August 16, 2004, Plaintiff submitted an "Informal Resolution" request seeking state law cases regarding an appeal of his state law conviction. Pl.'s 7.1 Statement at ¶ 10, Ex. E1, Informal Resolution, dated Aug. 16, 2004. Defendant Snyder responded on August 25, 2004, and stated the law library was not mandated to carry state law material and that the library was in full compliance with the Bureau of Prison's policies. *Id.* at ¶ 11, Ex. E2, Resp. to Informal Resolution, dated Aug. 25, 2004.

On October 10, 2004, Plaintiff proceeded to file another Inmate Request asking Defendant Snyder if there was any other way to provide the state law materials previously requested. *Id.* at ¶ 7, Ex. D4, Inmate Req. to Staff, dated Oct. 10, 2004. Defendant Snyder responded on October 23, 2004, and stated that state materials were not maintained in the library, she had no access to the material, and Plaintiff should contact the clerk of the state court for the materials. *Id.* at ¶ 7, Ex. D4, Disposition of Inmate Req. to Staff, dated Oct. 23, 2004.

## II.  DISCUSSION

### A.  Summary Judgment Standard

As previously noted, because the Court will consider matters outside the pleadings, the Motion will be treated as one for Summary Judgment.  *See* FED. R. CIV. P. 12(b) (noting that if matters outside the pleading are submitted and not excluded by the court, the motion shall be treated as one for summary judgment pursuant to Rule 56); *see also supra* note 1.  Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," that there is no genuine issue of material fact.  *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party."  *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts submitted by the moving party.  FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994).  To that end, sworn

statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) and *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

### B. Official Capacity Suits

Plaintiff brings suit against Defendants Drew and Snyder. Plaintiff does not specify whether Defendants are sued in their individual or official capacities. Am. Compl. at ¶ 13. Plaintiff seeks monetary damages, attorney's fees and costs, as well as any additional relief the Court deems just and proper against these Defendants. *Id.* at Wherefore Clause.

The Second Circuit has stated that "[i]n a *Bivens* action, alleged victims of constitutional violations by federal officials may recover damages despite the absence of any statute specifically conferring such a cause of action." *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) (citing *Carlson v. Green*, 446 U.S. 14, 18 (1980)). Despite that fact, a lawsuit can only "be brought against the federal officers involved in their individual capacities." *Id.* The

reasoning behind the rule is that "an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, [and] such suits are . . . barred under the doctrine of sovereign immunity, unless such immunity is waived." *Id.* (citing *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 484-86 (1994) & *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985)).

Thus, Defendants may not be sued in their official capacities. However, Plaintiff's lawsuit may proceed against the Defendants in their individual capacities.

### C. Law Library Claim

Plaintiff states that Defendant Snyder did not provide him with state law legal materials in order for him to attack his state conviction upon which his current enhanced federal sentence was based. Am. Compl. at ¶ 19; Defs.' 7.1 Statement at ¶¶ 6 & 7. Plaintiff also claims that Defendant Drew inhibited his access to the courts and state legal materials by failing to overrule Defendant Snyder's decisions regarding the state legal materials. Am. Compl. at ¶ 20.

Under the First Amendment, "prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Bourdon v. Loughren*, 386 F.3d 88, 92 (2d Cir. 2004). This right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. at 828; *Bourdon v. Loughren*, 386 F.3d at 92 (quoting *Bounds*). However, there is no "abstract, freestanding right to a law library or legal assistance, [and] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). The Supreme Court held that in order to fulfill the actual injury requirement, derived from the constitutional doctrine of standing, on a law library claim where there

is a lack of access to the courts, the inmate must be pursuing direct appeals from the conviction for which he or she was incarcerated, a *habeas corpus* petition, or a civil rights claim pursuant to § 1983 "to vindicate basic constitutional rights." *Lewis v. Casey*, 518 U.S. at 354. Thus, to prove an actual injury, a plaintiff "must show that a non-frivolous legal claim was frustrated or impeded due to the actions of prison officials." *Murray v. Michael*, 2005 WL 2204985, at *16 (N.D.N.Y. Sept. 7, 2005) (citing *Warburton v. Underwood*, 2 F. Supp. 2d 306, 312 (W.D.N.Y. 1998)).

In this case, Plaintiff seeks to attack a state conviction, and is not pursuing a direct appeal from the conviction for which he is currently incarcerated, as he was convicted in federal court on federal charges. Defs.' 7.1 Statement at ¶ 2; Pl.'s 7.1 Statement, Ex. A, Plea Agreement; Dkt. No. 21, Pl.'s Mem. of Law at p. 2. Prior to Plaintiff's federal charges, he pled guilty to robbery in the first degree, a class B felony, in the New York State Supreme Court, Bronx County, on February 14, 1992.[7] Pl.'s Mem. of Law at p. 2; Pl.'s 7.1 Statement, Ex. C, Bronx Plea Tr. at pp. 2-3, & 8. During Plaintiff's sentencing for the federal charges, the Honorable Jack B. Weinstein, United States District Judge for the Eastern District of New York, was provided information regarding Plaintiff's criminal history and told that Plaintiff had committed a robbery in the 1990's and that it had been violent. Pl.'s Mem. of Law at p. 2; Pl.'s 7.1 Statement, Ex. B, Sentencing Tr. at pp. 11-12. Judge Weinstein noted that the robbery was persuasive as to Plaintiff's criminal history but that it did not "quite persuade [him]." Pl.'s 7.1 Statement, Ex. B, Sentencing Tr. at pp. 11-12. After noting Plaintiff's "rather violent and unregenerate criminal history," which took into account at least one other conviction apart from the robbery, Judge Weinstein sentenced Plaintiff, under criminal history

---

[7] Plaintiff was notified on the record of the repercussions of pleading guilty to the charge and Plaintiff stated he fully understood the consequences. Pl.'s 7.1 Statement, Ex. C, Bronx Plea Tr. at pp. 2-10.

3, to one hundred sixty-eight months imprisonment. *Id.*

In regards to the federal charges for which he was sentenced and is currently incarcerated, Plaintiff entered into a Plea Agreement with the Government. Pl.'s Mem. of Law at p. 2; Pl.'s 7.1 Statement, Ex. A, Plea Agreement. Within the Plea Agreement, it states the "[t]he defendant will not . . . file an appeal or otherwise challenge the conviction or sentence in the event that the Court imposes a term of imprisonment of 168 months or below." Pl.'s 7.1 Statement, Ex. A, Plea Agreement at p. A51. In essence, Plaintiff seeks to appeal his state court conviction in order to challenge the federal sentence, which challenge Plaintiff agreed to waive in the Plea Agreement. Plaintiff believes any reliance on the robbery charge in sentencing Plaintiff on the federal charge was "illegal and unconstitutional" because he was not allowed to challenge his prior conviction at the federal sentencing. Pl.'s Mem. of Law at pp. 2-3. Plaintiff now wishes to "overturn[] an illegal state conviction, which was used to federally enhance[]" his current sentence. By his current lawsuit, he claims that the law library at the federal prison is inadequate in that he has no access to state law materials and thus no adequate means to challenge his "illegal state conviction."

Plaintiff is not granted a freestanding right to a law library or legal assistance. Pursuant to 28 C.F.R. § 543.10, the Warden is provided with the authority to "establish an inmate law library, and procedures for access to legal reference materials and to legal counsel, and for preparation of legal documents." It also states that "[t]he Bureau of Prisons affords an inmate *reasonable access* to legal materials and counsel, and reasonable opportunity to prepare legal documents." 28 C.F.R. § 543.10 (emphasis added). Under the Bureau of Prisons Program Statement 1315.07, § 2(d) clearly notes that the "Maryland Reporter and Atlantic 2d Reporter" are the only required state case law and that the "Bureau **is not** mandated to provide state case law and other state legal materials." Defs.'

7.1 Statement, Ex. 1f, Program Statement at p. 2 (emphasis in original).  The Bureau of Prisons' law library contains a plethora of federal legal materials.  *See id.*, Ex. 1f, Program Statement & Attachments A & C.  The Program Statement also notes, in part, that "[s]tate officials are responsible for providing state legal assistance and/or state legal materials to **state inmates** transferred to Federal custody."  *Id.*, Ex. 1f, Program Statement at § 7(c)(3) (emphasis added).

   Since the Bureau of Prisons has promulgated its own program regarding what legal materials are offered by the law library, a court should give some weight to the Bureau's policies in determining whether the materials are enough to provide meaningful access to the courts.  *Stover v. Carlson*, 408 F. Supp. 696, 698 n.1 (D. Conn. 1976).  However, a court must make its own inquiry into the constitutionality of the law library, "and while such an evaluation may consider the view of the Bureau of Prisons, it may not wholly defer to it."  *Id.* (citing *Cruz v. Beto*, 405 U.S. 319, 321 (1972)).  More importantly, it has been held that federal prisons are not required to include in their law library state reports and digests.  *Gaglie v. Ulibarri*, 507 F.2d 721, 722 (9th Cir. 1974) (approving the contents of a federal prison library that did not include state law reports or digests but did contain *United States Supreme Court Reports* beginning with volume 300, *Federal Reporter Second Series* beginning with volume 275 and *Federal Supplements* beginning with volume 200); *see also Kivela v. United States Attorney Gen.*, 523 F. Supp. 1321, 1325 (S.D.N.Y. 1981) (noting that "[i]t is hardly to be expected, nor is it required, that every federal penal institution have in its library the law books of each of the fifty states of the Union.  Indeed, there are many courts throughout the United States, federal and state, which do not maintain such elaborate libraries."); *Stover v. Carlson*, 408 F. Supp. at 699 (observing that the Bureau of Prisons has a limited budget and must strike a "balance between the rights of federal inmates to have access to the courts and the

need to spend the government's money carefully").

Here, Plaintiff is a federal inmate who seeks to attack a plea entered into in February 1992 in the New York State Supreme Court, Bronx County. Dkt. No. 21, Pl.'s Mem. of Law at 12. Plaintiff claims the federal law library is inadequate as there are no state law materials and that his access to the courts is therefore hindered. *Id.* at p. 11. In order to establish an actual injury as required under *Lewis*, a prisoner must be pursuing a direct appeal to overturn a conviction for which the prisoner is incarcerated, a *habeas corpus* petition, or a civil rights claim. Putting aside that the state conviction was examined as part of Plaintiff's criminal history, Plaintiff is not currently incarcerated for the state conviction. Furthermore, it is not clear whether Plaintiff seeks to challenge his state court conviction through a *habeas corpus* petition, though it seems to be the only avenue by which Plaintiff could make this challenge. The Court is not aware of the grounds Plaintiff would raise, however, we note that Plaintiff's state conviction resulted from a guilty plea. Pl.'s 7.1 Statement, Ex. C, Bronx Plea Tr. During the proceeding, the court questioned Plaintiff as to his capacity, willingness, and knowledge in entering his guilty plea. *Id.*, Ex. C, Bronx Plea Tr. pp. 3-10. The court asked whether Plaintiff: 1) recently used alcohol, drugs, or any medication that could interfere with Plaintiff's physical or mental condition; 2) discussed the indictment with his attorney before pleading guilty; 3) was satisfied with the representation; 4) fully understood the charges; 5) was aware he had a right to trial if he pled not guilty; 6) was aware that by pleading guilty he was giving up his right to a trial and all corresponding proceedings that could occur; and 7) was forced to plead guilty or promised something by someone for pleading guilty. *Id.*, Ex. C, Bronx Plea Tr. at pp. 3-9. Plaintiff stated he did not take anything that would interfere with his physical or mental condition, that he discussed the proceeding with his attorney and was satisfied with the representation, that he

understood the charges and was aware of his rights but chose to plead guilty, and that he was not forced to plead guilty or promised anything in order to plead guilty.  *Id.*  A plea may be challenged by a plaintiff if the plea was not made knowingly or voluntarily.  *See Lustyk v. Murray*, 2004 WL 1949473, at * 2 (W.D.N.Y. Aug. 30, 2004) (citing *Boykin v. Alabama,* 395 U.S. 238, 242-43 (1969) & *Brady v. United States,* 397 U .S. 742, 755 (1970)).  However, based upon the transcript of the proceeding, a challenge to Plaintiff's plea would in fact be frivolous as the plea was clearly made knowingly and voluntarily.  Thus, even if no state materials were provided to Plaintiff by FCI Ray Brook, there would be no actual injury as he has not shown that he intended to pursue a non-frivolous claim.

Notwithstanding, the law library was reasonably adequate to afford an inmate the "opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis v. Casey*, 518 U.S. at 351.  Federal prisons are not required to possess state law materials, even though FCI Ray Brook does have the Maryland and Atlantic 2d Reporters.  Defs.' 7.1 Statement, Ex. 1f, Program Statement at § 2(d).  FCI Ray Brook also contains an expansive array of legal material including, for example, the Federal Reporters, United States Code, Federal Regulations, Supreme Court Reports, Criminal Law Reporter, District of Columbia Code, Federal Criminal and Civil Rules, American Jurisprudence, and the United States Constitution.  *Id.*, Ex. 1f, Program Statement, Attach. A & C.  In addition to the law library, alternatively the inmate may retain an attorney or utilize a legal aid program available.  *Id.*, Ex. 1f, Program Statement at §§ 12 & 14.  Plaintiff also had access to an inmate law clerk.  Pl.'s 7.1 Statement at ¶¶ 8 & 9.  Plaintiff was further told by several individuals that he could contact the clerk of the court where his case would be heard for information or seek assistance from the unit team.  *See* Defs.' 7.1 Statement, Exs. 1b,

1c, 1d, & 1e. Neither Defendant Snyder nor Drew frustrated a non-frivolous legal claim or impeded Plaintiff's access by their actions.[8]

Therefore, it is recommended that the Motion for Summary Judgment be **granted**.

### D. Liability of Defendant Drew

Although the Court recommends the Motion be granted, Defendant Drew asserts that, in any event, he cannot be held liable on the theory of *respondeat superior* for failing to overrule Defendant Snyder's denials. Defs.' Mem. of Law at pp. 13-14; Am. Compl. at ¶ 20.

In order "[t]o establish a *Bivens* claim, the plaintiff must allege that the individual defendants were personally involved in the violation of his constitutional rights." *Shannon v. United States Parole Comm'n*, 1998 WL 557584, at *2 (S.D.N.Y. Sept. 2, 1998) (citing *Barbera v. Smith*, 836 F.2d 96, 99 (2d Cir. 1987), *cert. denied sub nom. Barbera v. Schlessinger*, 489 U.S. 1065 (1989)). Thus, the fact that a defendant "may have had supervisory authority over those who violated the plaintiff's rights is not sufficient to make out a *Bivens* claim." *Id.* (citing *Ellis v. Blum*, 643 F.2d 68, 85 (2d Cir. 1981) (stating that there is generally no *respondeat superior* liability in *Bivens* actions)). However, a supervisory official who has not directly participated in the conduct complained of may be found personally involved if he created, or permitted to continue, the policy or practice pursuant to which the alleged violation occurred or acted recklessly in managing his subordinates who caused the unlawful incident. *Mallard v. Menifee*, 2000 WL 557262, at *3

---

[8] As an aside, to the extent Plaintiff is attempting to attack his federal sentence, a § 1983 or *Bivens* action to attack the conviction is improper. In any event, such an attack would be futile, though such issue is not before us. *See United States v. Garcia*, 166 F.3d 519, 521 (2d Cir. 1999) (holding that the right to appeal a sentence can be waived in a plea agreement and rejecting the defendant's appeal as a "poorly disguised attack on the merits of her sentence" by "couching [the] appeal in constitutional terms"); *United States v. Salcido-Contreras*, 990 F.2d 51, 51 (2d Cir. 1993) (finding that because the sentencing range was expressly laid out in the plea agreement, the waiver of right to appeal was valid).

(S.D.N.Y. May 8, 2000) (citing *Barbera v. Smith*, 836 F.2d at 99); *see also Tellier v. White*, 2000 WL 1290612, at *3 (S.D.N.Y. Sept. 12, 2000) (citations omitted).

Here, Plaintiff did not respond to Defendant's argument. *See* Pl.'s Mem. of Law. However, through his Amended Complaint, Plaintiff does not allege that Defendant Drew was personally involved in a violation, only that he failed to overturn Defendant Snyder's determinations. Am. Compl. at ¶ 20. Additionally, Plaintiff has not shown any circumstances by which Defendant Drew could be responsible as a supervisory official even though there was no direct participation by him regarding the conduct complained of by Plaintiff.

Thus, it is recommended that the Motion for Summary Judgment be **granted** as to Defendant Drew on the issue of personal involvement.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Motion for Summary Judgment (Dkt. No. 20) be **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:   August 23, 2006
        Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge